The plaintiffs claimed the land in controversy under a grant from the State to John Chapman in 1780, and the will of said Chapman devising the land to his children, Enoch and Letty Chapman, and a deed from them to the plaintiffs.
When the will of John Chapman was offered in evidence by the plaintiffs, the defendant objected to its introduction on the ground that it had not been duly proved.
The will was attested by three witnesses and proved by one of them. Accompanying the copy of the will as certified by the judge of probate of Alexander county, the following appears: *Page 195 
NORTH CAROLINA, WILKES COUNTY. May Session, 1837.
This will was duly proved in open court by the oath of William C. Emmett and ordered to be recorded at full length.
 Teste: WILLIAM MARTIN, Clerk, BENJ. W. COSS, Deputy Clerk.
This was endorsed on the will:
STATE OF NORTH CAROLINA, WILKES COUNTY.
I, A. H. Horten, Clerk of the Superior Court and judge of probate for the county and State aforesaid, do certify that the foregoing is a full and true copy as taken from the record of the late court of pleas and quarter sessions of said county, now on file in my office. In testimony whereof I hereunto set my hand and seal of office, at office in Wilkesboro this March 24, 1880.
 (Signed) A. H. HORTEN, Clerk Superior Court and Judge of Probate.
The plaintiff offered evidence to show that the defendant entered into and held possession of the land in controversy under the plaintiff by a verbal contract of lease, and to sustain the proposition offered, among other things, the following testimony by one Hill: That some nine or ten years before the trial witness and plaintiff went to the defendant's home. The fence around the land in dispute had gone down. At some points there was a low fence with gaps at intervals. That witness, plaintiff, defendant Peyton Russell and his father Isaac Russell, were standing at one of the gaps in the fence around the field in controversy, when either the defendant Peyton proposed to plaintiff to rent the field in controversy from the plaintiff for a pasture, or his father Isaac Russell, in presence of defendant, proposed that plaintiff should lease said field to defendant for a pasture. The plaintiff agreed to let the defendant take the field for a pasture, if he would put *Page 196 
a good fence around it, and the defendant or his father, in his presence, agreed to do so. The witness further stated that he is not mistaken as to the field; that they were all standing by the land in controversy and pointing to that field.
The defendant denied that the land in controversy was that referred to in the conversation as is testified to by the witness, and there was much contrary evidence offered on both sides.
The defendant also offered evidence to show that he and those under whom he claimed had been in possession of the land in dispute for forty years, and this was controverted by the plaintiff, who offered testimony to show that the field in question was not inclosed or held in possession by any person at the time when the conversation testified to by Hill was had and for some time previous thereto. On this question there was some conflict of testimony.
His Honor, among other things, charged the jury upon the question of tenancy, that "the plaintiff could recover without exhibiting or relying upon any paper-title if he satisfied the jury by a preponderance of testimony, that the defendant entered upon the land as his tenant, and had not been evicted since he so entered. That the rule of law was, that when one entered upon the land as tenant of another, he was estopped from denying the title of his landlord until evicted."
The court then instructed the jury to consider first the testimony bearing upon the question whether the defendant entered as the tenant of the plaintiff, "because it was admitted that there had been no eviction, and if the defendant so entered he would be estopped to deny the title of the plaintiff."
The court further instructed the jury in reference to the evidence upon this question, "that if the defendant asked the plaintiff to let him have the field in controversy for a pasture, and plaintiff agreed to do so if defendant would put a fence around the field, and defendant took possession under said agreement, that would constitute a contract, and the relation of landlord and tenant would be created and would continue until eviction." *Page 197 
The court further charged the jury upon this question, that "if Isaac Russell, the defendant's father, asked the plaintiff in the defendant's presence to allow the defendant to have the field in controversy for a pasture, the defendant interposing no objection, the effect would be the same as if the permission had been asked by the defendant."
The defendant excepted to the part of His Honor's charge as here set forth.
The jury rendered a verdict in favor of the plaintiff. There was judgment in his behalf from which the defendant appealed.
The defendant excepted to the introduction of the will of John Chapman, upon the ground it had never been duly admitted to probate. His Honor overruled the objection and admitted the copy of the will in evidence. But as the case turned upon the question of estoppel, it was not necessary for the plaintiff to establish a paper-title, and the ruling of His Honor upon this point was, therefore, immaterial.
The main contest in the case was whether the defendant had entered into the land in controversy as the tenant of the plaintiff.
Nearly all the evidence was directed to that point and the burthen of His Honor's charge was in expounding the law to the jury upon that subject. The jury found their verdict in favor of the plaintiff and from the course of the trial it is evident the jury found for the plaintiff upon the ground that the defendant entered into the land as tenant of the plaintiff, and was, therefore, estopped to deny his title.
The only other exception taken by the defendant was to that part of the charge wherein His Honor told the jury in substance, that if defendant's father in defendant's presence, asked the plaintiff to rent the land to the defendant as a pasture, the defendant interposing no objection, this was the same in effect as if *Page 198 
defendant himself had asked the plaintiff to rent the land to him. This exception is met by one or all of the following maxims — "qui tucet,consentire videtur," "qui facit per alium, facit per se," and omnisratihabitio retrotrahitur et mandato priori aequiparatur."
There is no error. The judgment of the Superior Court is affirmed.
No error. Affirmed.